WILLIAM TINES, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

Roberts & Deatherage, Kingston, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

William Tines, plaintiff in error, or hereinafter referred to as defendant, was convicted of the rape of Bertha Riggs and was sentenced to death by electrocution. He has appealed and assigned several errors of law.

The first error assigned is that the alleged confession was improperly admitted into evidence because (a) defendant was not speedily arraigned and the confession was obtained prior thereto, and (b) the *corpus*

*delicti* was not proved prior to the introduction of the confession.

The material facts are as follows: Mrs. Riggs, a widow since her husband's death 16 years ago, supported herself and her aged father by working for Mr. and Mrs. Nichols who live along highway No. 61 in Roane County. On the morning of April 25, 1957, Mrs. Nichols left Mrs. Riggs alone in the residence about 8:30 A.M. while the latter was engaged in ironing clothes. An hour or more later it was discovered that Mrs. Riggs had evidently been brutally assaulted in the dining room of the Nichols home. The kitchen, dining room, hall and bathroom floors were bloody. Spots of blood were found on the walls in one of the rooms. Bloody towels and cloths were lying on the kitchen floor. The iron which Mrs. Riggs had been using was still connected and had burned through the linoleum and into the floor partly.

The doctor to whom she was later taken testified that she was dazed and hysterical; was having a great deal of pain and some of her clothing, which was partially torn off, was saturated with blood; there was marked discoloration of her face and the skin on her face and forehead had hemorrhaged, her nose had been fractured and displaced, there was a large laceration over the bridge of the nose; her eyes were swollen and she could not see out of the left eye; there was a swollen area about 2 inchs in diameter behind her right ear and a number of abrasions were on her scalp. On her back on the mid line of her spine in the chest area was a friction burn and soreness. A smear from the vaginal canal disclosed positive male sperm indicating penetration.

On that same morning the defendant had escaped from Brushy Mountain Prison in Morgan County, where he was serving a sentence for robbery and a life sentence for murder. A short while before this assault occurred, a Mr. and Mrs. Clyde Carter driving along highway No. 61 in front of the Nichols home, had observed a Negro carrying his shoes in his hands and wearing a prison uniform standing near a shrub a few feet away from the corner of the Nichols residence. They drove a short distance, turned around and drove back in front of the Nichols home and saw this man on the front porch approaching the front door. They drove a short distance to a store, where they gave the alarm to the officers at Kingston and the officials at Brushy Mountain Prison and then went to the store of Mr. Nichols to give him the information. When the various parties arrived there, they observed the condition heretofore described.

At 11:00 A.M. on that same morning, the defendant was captured about three-fourths of a mile from the Nichols residence by a lieutenant of the Highway Patrol, who took him back to prison. On the way he asked the defendant why he had beaten the woman and he replied, "I beat her harder than I intended to, or harder than I meant to." He said he was looking for money and clothes to go to Knoxville. He had blood on his clothing and his right thumb was lacerated and swollen. The next day the sheriff and an investigator from the attorney general's office took down in writing a confession from the defendant which, they testified, was freely and voluntarily given after they had told him that it might be used against him, the same was read to him, since he was unable himself to read, and that he signed the same by

his own signature. A warrant was obtained on April 26 charging him with rape and about a week later the preliminary hearing was held before a magistrate.

Mrs. Riggs was not able to recall anything leading up to and during the attack; she said that she did remember looking at the clock at 9:00 o'clock. She was asked, however, whether she knew of her own knowledge that she was penetrated and she replied, "Yes, I feel, I felt like I was". Then she was asked what made her feel like she was and she replied, "Well, when I come to myself, I know what I was doing and what I was going to do and it just felt like there was just blood * * * the doctor said I would have to be operated on and I thought it was blood coming from where I had to be operated on and it wasn't, it was just a discharge.

"Q. Did you see a discharge? A. Yes, I did.

"Q. Was that discharge on there before? A. No, it was not.

"Q. Could you tell us whether or not there was any blood in that discharge? A. Well, I did not pay any attention, I was getting to the telephone as quick as I could."

She frankly stated that she could not identify this Negro and that she did not know whether he was the one who raped her or not.

With regard to the failure to arraign speedily, counsel for defendant cite *Mallory v. U. S.*, 354 U.S. 449, 451, 77 S.Ct. 1356, 1 L.Ed.2d 1479, and *McNabb v. U.S.*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Those cases, however, are not applicable to the facts herein because this

defendant was an escapee from the State Prison and was already restrained of his liberty before the commission of this crime and when he was recaptured he was again restrained of his liberty because that is where he belonged. That restraint had nothing to do with the crime in the instant case. Nor was the delay of about a week before he was taken before a magistrate had for the purpose of extracting a confession from him because the confession was obtained the day after the crime was committed.

Then generally see *East v. State,* 197 Tenn. 644, 648, 277 S.W.2d 361, with reference to the distinction between the federal rule and the rule in this State.

Then with reference to the *corpus delicti,* first, we call attention to the fact that it would not be a fatal defect if it were true that the confession was introduced before proof of the *corpus delicti. Ashby v. State,* 124 Tenn. 684, 139 S.W. 872. Such is not the case here, however, because the *corpus delicti* may be proved by circumstantial evidence. *Taylor v. State,* 191 Tenn. 670, 235 S.W.2d 818. The above recital of the evidence shows that there was in fact proof of the *corpus delicti* before the confession was offered. We have recently, in the case of *Wooten v. State,* 203 Tenn. 473, 314 S.W.2d 1, had occasion to define *corpus delicti* and we again refer to 14 Am.Jur. 758, Sec. 6.

This assignment must, therefore, be overruled.

By another assignment it is complained that the court did not charge as to the weight and sufficiency of the confession and that confessions are to be received and considered with extreme caution. There was no special

request for same.  Counsel cites *State v. Fields,* 7 Tenn. 140.

That case is not authority for the contention that the court should charge the jury that confessions are to be received and considered with extreme caution; that case relates to the duty of the judge in making his preliminary ruling as to the admissibility of the confession which is offered.  That is, the judge must first determine that there is credible evidence that there has been a confession and that it was voluntary.  If he holds the alleged confession admissible, it is still not conclusive on accused and he may offer evidence to the jury to show his innocence, or that he made no confession, or that same was not voluntary, or any matter such as mental or physical illness or weakness to weaken the force of same, etc. *Nelson v. State,* 200 Tenn. 462, 292 S.W.2d 727; 22 C.J.S. Criminal Law sec. 842, p. 1477.  It then becomes the sole province of the jury to determine such matters and the weight to be given the confession and each part of same. Any attempted instruction by the court as to the weight to be given same, other than that it is to be given such weight as the jury deems it to be entitled in whole or in part, would be error.  *Espitia v. State,* 199 Tenn. 696, 700, 288 S.W.2d 731.

Defendant testified in the instant case that he was sick and asked the officials for help.  That they replied they could not help him unless he signed the confession.  That he was under the impression they were going to get him "a lawyer to help me or something."

There was no special request nor special charge on confessions; the general charge was "Gentlemen, the accused having testified in his own behalf, the jurors

will judge and weigh his evidence just as you do that of any other witness in the case, always remembering, however that he is a party to the lawsuit and interested in the outcome of the trial. * * *''

Hence we are of the opinion this assignment must be overruled.

■ Another assignment is predicated on the fact that in the charge referred to Sections 10780 and 10781 of the 1932 Code relating to the offense of rape and the punishment therefor, because it is said that those sections were repealed by the new Code. T.C.A. secs. 39-3701 and 3702 are identical with the above sections of the 1932 Code, so that the instruction was strictly correct. Then also, T.C.A. sec. 1-204 provides that in construing statutes the codification shall be treated as a continuation of existing law. Hence, this was a technical error of no materiality whatever.

■ The last error assigned is that the court should have admonished the jury to look alone to the evidence presented on the trial of the cause, because of the wide publicity which was given to the crime by the newspapers of the county, and because one of the jurors worked at the same lumber company where a brother of Mrs. Nichols worked.

■ There is nothing in the record to show that the jury considered anything other than the evidence offered in the trial, there was no special request for any such instruction and the examination on the *voir dire* by agreement was omitted from the bill of exceptions, so it must be assumed that the jurors were all properly qualified.

Therefore, all assignments must be overruled and the judgment of the lower court affirmed.

The Court wishes to acknowledge its appreciation of the efforts of counsel for the plaintiff in error, who represented him by appointment of the court.

It results that defendant will be committed to the Warden of the State Penitentiary and executed as the law directs on Tuesday, July 8, 1958.